IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **EMMA HARRIS,**<br>Plaintiff; | )<br>)<br>) |
| VS. | ) **JURY TRIAL DEMANDED**<br>)<br>) |
| **LARRY ADAMS and**<br>**LOWNDES COUNTY,**<br>Defendants. | )<br>)<br>)<br>) |

## COMPLAINT

**Plaintiff Emma Harris**, through the undersigned counsel, asserting the following causes of action and seeking to recover the following damages against Defendant Lowndes County.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343.

2. This Court has subject matter jurisdiction under 42 U.S.C. § 2000e *et seq.,* TitleVII of the 1964 Civil Rights Act ("Title VII") and 28 U.S.C. §§ 1981, 1983 ("Section 1981," "Section 1983").

3. Plaintiff has complied with all jurisdictional prerequisites for maintaining this action under Title VII. She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 9, 2024

and obtained a Notice of Right-to-Sue dated and received on April 9, 2025. This action was filed within ninety days of her receipt of the notice. A copy of the notice is attached herewith as Exhibit 1.

4. The actions complained of in this lawsuit took place in the Northern Division of the Middle District of Alabama.

## PARTIES

5. Plaintiff Emma Harris ("Ms. Harris" or "Plaintiff") is a black female citizen of the United States and of the State of Alabama. She is a resident of Lowndes County. Harris was a longtime employee of Lowndes County, having worked in the Enforcement department for 24 years and 3 months until early December, 2024.

6. Defendant Larry Adams ("Adams") is a black male citizen of the United States and of the State of Alabama. He is a resident of Lowndes County. He is at or above the age of nineteen (19). At all times relevant he was an employee of Defendant Lowndes County, and at all times relevant was acting under color of state law.

7. Defendant Lowndes County is a duly constituted political subdivision of the State of Alabama and at all times relevant was acting under color of state law.

## FACTS

8. From 2000 until 2024, Ms. Harris was employed in the Enforcement Department for Lowndes County. Ms. Harris was a diligent hard worker and had a consistently good disciplinary record during her time employed. Ms. Harris consistently upheld professional standards of integrity, fairness, and ethical conduct.

9. At the time of the below events, Ms. Harris was employed as an Enforcement Officer.

10. For some time prior to June 24, 2024, the position of Department Head for the Enforcement Department was held by Jacquelyn Thomas concurrently with Ms. Thomas's role as County Administrator.

11. Ms. Thomas determined that she could no longer perform both roles and so resigned from the Enforcement Department Head position.

12. On or about June 24, 2024, the Lowndes County Commission appointed Defendant Adams to the position of Department Head for the Enforcement Department.

13. Defendant Adams had worked in the Enforcement Department for approximately 6 years prior to his appointment as Enforcement Department Head.

14. Prior to his promotion, Defendant Adams was employed as an Enforcement Officer.

15. Defendant Adams and Lowndes County Commission Chairman Charlie King are friends.

16. Ms. Harris trained Defendant Adams for his role when he was initially hired in the Enforcement Department.

17. The Commission did not advertise a job opening for Enforcement Department Head position that Ms. Harris was able to apply for.

18. Ms. Harris was significantly more qualified for the Department Head role than Defendant Adams, who lacked managerial knowledge, skills, and ability.

19. The Lowndes County Commission is made up entirely of men.

20. On June 26, 2024, Ms. Harris spoke on the phone with Lowndes County Commission Chairman Charlie King, who knew of Ms. Harris's long record of service and encouraged her to take the leave time that she had accrued over many years, saying that he would never deny her the usage of that time.

21. Chairman King said that he would sign the request for leave that had been denied by Defendant Adams.

22. Ms. Harris also let Commissioner King know during this phone call of her displeasure regarding being passed over for the promotion that was given to Defendant Adams.

23. Also on June 26, 2024, Ms. Harris spoke with County Administrator Ms. Thomas and Human Resources Head Ms. Kim West and told them that she felt the promotion of Defendant Adams instead of her was unfair.

24. On or before September 30, 2024, Ms. Harris requested leave from October 18 to November 5, in order to provide care for her daughter, who was to be hospitalized in order to undergo major surgery, and her daughter's young son.

25. The October 18-November 5 leave request was approved on September 30, 2024.

26. Ms. Harris's daughter's surgery was subsequently rescheduled, but because Ms. Harris's leave had already been approved, she went ahead and took the leave.

27. In October 2024, Ms. Harris's daughter launched a candidacy as a write-in candidate for the seat on the Lowndes County Commission currently held by Commissioner King.

28. As of November 2024, Ms. Harris had accrued 1,339.77 hours of vacation leave and 1,114.59 hours of sick leave during her time employed by Defendant Lowndes County. These numbers demonstrate her restraint and responsibility managing her leave throughout her career.

29. The election took place on November 5, 2024, and Commissioner King won another term, defeating Ms. Harris's daughter's write-in campaign.

30. Ms. Harris felt ill on November 6, 2024, but knew that she needed to return to work, so she did so.

31. Ms. Harris saw that Defendant Adams had taken no action on the list of over 50 noncompliance requests that had been gathered from the field prior to Ms. Harris's October leave.

32. Nevertheless and inexplicably, Defendant Adams told Ms. Harris on November 6 that Chairman King wanted them to go out into the field again and perform compliance checks.

33. Because Ms. Harris's illness necessitated her remaining close to a bathroom, she told Defendant Adams that she felt she needed to remain in the office and work on the prior list of noncompliance requests.

34. Defendant Adams told Ms. Harris that she should go home if she was sick.

35. That day, Ms. Harris submitted another written request for leave to Defendant Adams, requesting off from November 7 to December 2.

36. Ms. Harris had already spoken to the County Administrator Ms. Thomas and two County Commissioners about this request before submitting it to Defendant Adams, and spoke with them about the specific reasons for the request, being that her daughter's major surgery had been rescheduled from October and

that Ms. Harris was needed at home to care for both her daughter and her daughter's young son while her daughter recovered.

37. Defendant Adams returned the request to Ms. Harris unsigned that same day before Ms. Harris's ride arrived to take her home.

38. Defendant Adams told Ms. Harris to consult with Commissioner King regarding her leave.

39. Ms. Harris then contacted the County Administrator's Office and spoke to Ms. Thomas, who advised her to go ahead and take the leave request to Kim West, who manages human resources for the County, and that Ms. West would sign it when she got back to work.

40. Ms. Harris took this as verbal confirmation of approval of the leave, as it was not unusual for leave requests to be approved through Ms. Thomas or Ms. West if the immediate supervisor did not approve the leave.

41. When Ms. Harris returned to the office for work on December 2, 2024, Defendant Adams told her that she had abandoned her position.

42. Defendant Adams presented Ms. Harris with a Notice of Termination, for allegedly failing to properly request leave and for abandoning her position.

43. Ms. Harris had not been presented with any written or verbal counseling, documentation, or prior notice indicating performance issues,

misconduct, or failure to comply with County procedures, nor had she been informed of the need for any of the above.

44. None of the progressive disciplinary steps required by Lowndes County employment procedures were followed regarding Ms. Harris.

45. All allegations regarding Ms. Harris having shown favoritism to family or friends during her time employed are unsubstantiated, subjective, and lack any factual or documented basis.

46. Jacquelyn Thomas, County Administrator for Lowndes County for over forty years and for a time concurrently a direct supervisor of Ms. Harris as the Enforcement Department Head, confirmed that Ms. Harris was a good hard worker who put her job duties above her own health, and that she had never received any complaints from the community regarding Ms. Harris showing improper bias or favoritism.

47. Ms. Harris met with the Personnel Board and the County's attorney, Prince Chestnut, on December 12, 2024 for a pretermination hearing.

48. Ms. Harris was officially terminated by the County at a follow-up meeting shortly thereafter in December 2024.

49. Ms. Thomas and Ms. West both told Defendant Adams that he was wrong to fire Ms. Harris.

50. On June 30, 2025, Ms. Thomas announced at a meeting of the Lowndes County Commission her intention to retire from her County Administrator effective December 31, 2025

51. Ms. Thomas recommended that the Commission appoint Kim West to the County Administrator.

52. The County attorney at the meeting advised the Commission that they would be putting themselves at legal risk if they appointed Ms. West to the position without advertising the opening if there was somebody else internally who was equally qualified or more qualified for the position.

53. Ms. Thomas noted that the County had not advertised the Enforcement Department Head position the previous year, in 2024.

## CLAIM FOR RELIEF

### Count 1
### Title VII
### Gender Discrimination – Failure to Promote
### Defendant Lowndes County

54. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-52 of the Complaint.

55. Plaintiff is a woman.

56. Plaintiff was qualified to be promoted to the position of Enforcement Department Head in June 2024.

57. Defendant Adams was not qualified to be promoted to the position of Enforcement Department Head in June 2024, under the standards applicable to the position under County regulations.

58. Defendant Adams was appointed to the position by the Commission and Ms. Harris was not, without any consideration for Ms. Harris's significantly higher credentials and level of experience.

59. Defendant Adams was hired for the position because he, like every Commissioner on the Lowndes County Commission, is a man.

### Count 2
### Section 1983 Violation of Section 1981
### Gender Discrimination - Failure to Promote
### Defendant Lowndes County

60. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-52 of the Complaint.

61. Plaintiff is a woman.

62. Plaintiff was qualified to be promoted to the position of Enforcement Department Head in June 2024.

63. Defendant Adams was not qualified to be promoted to the position of Enforcement Department Head in June 2024, under the standards applicable to the position under County regulations.

64. Defendant Adams was appointed to the position by the Commission

and Ms. Harris was not, without any consideration for Ms. Harris's significantly higher credentials and level of experience.

65. Defendant Adams was hired for the position because he, like every Commissioner on the Lowndes County Commission, is a man.

### Count 3
### Title VII
### Retaliation
### Defendant Lowndes County

66. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-52 of the Complaint.

67. Plaintiff engaged in protected activity by complaining to Commissioner King, as well as to Ms. Thomas and Ms. West, about the Commission's promotion of Defendant Adams to the role of Enforcement Department Head instead of her.

68. Commissioner King and Defendant Adams are friends.

69. Upon information and belief, Commissioner King informed Defendant Adams that Ms. Harris was unhappy that Defendant Adams had received the promotion instead of her.

70. Defendant terminated Ms. Harris on trumped-up and false charges of abandoning her post or not following rules, while the real reason was that Defendant Adams was bothered and threatened by Ms. Harris's willingness to speak to others about how she felt she had deserved the promotion more than Defendant Adams.

## Count 4
### Section 1983 Violation of Section 1981
### Retaliation
### All Defendants

71. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-52 of the Complaint.

72. Plaintiff engaged in protected activity by complaining to Commissioner King, as well as to Ms. Thomas and Ms. West, about the Commission's promotion of Defendant Adams to the role of Enforcement Department Head instead of her.

73. Commissioner King and Defendant Adams are friends.

74. Upon information and belief, Commissioner King informed Defendant Adams that Ms. Harris was unhappy that Defendant Adams had received the promotion instead of her.

75. Defendant terminated Ms. Harris on trumped-up and false charges of abandoning her post or not following rules, while the real reason was that Defendant Adams was bothered and threatened by Ms. Harris's willingness to speak to others about how she felt she had deserved the promotion more than Defendant Adams.

## Count 5
### 42 U.S.C. § 1983
### First Amendment Freedom Of Association
### All Defendants

76. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-52 of the Complaint.

77. The First Amendment prohibits the state from denying its citizens the right to associate with whomever they choose, just as it prevents the state from compelling any such association. *Smith v. City of Greensboro*, Civil Action No. 13-495-CG-M, 2015 U.S. Dist. LEXIS 30350 at *17 (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 71 (1990)

78. The government may not alter its employees' work conditions in retaliation for them having exercised their First Amendment rights. *Id.* at *18 (citing *Morgan v. Ford*, 6 F.3d 750, 753-54 (11th Cir. 1993).

79. Plaintiff's complaints regarding her treatment in the November 2020 staff meeting were protected speech under the First Amendment.

80. Plaintiff's relation to her daughter and her daughter's candidacy for Commission did not impact her ability to do her job and did not adversely impact departmental respect or discipline.

81. Nevertheless, Chairman King was unhappy that he had a challenger, and upon information and belief he discussed the matter with Defendant Adams.

82. Defendant Adams terminated Ms. Harris on trumped-up and false charges of abandoning her post or not following rules, while the real reason was that Defendant Adams had spoken with Commissioner King, who was unhappy with Ms. Harris's daughter's write-in candidacy, and took action against Ms. Harris to enact

some sort of revenge upon Ms. Harris and her family.

83. Ms. Adams' termination would have the chilling effect of likely deterring a person or ordinary firmness from continuing to exercise their First Amendment freedom of association, and was intended to have such effect.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request the following relief:

a. That this Court render a judgment finding the Defendants liable for the aforementioned causes of action;

b. That is Court issue an Order requiring the Defendants to pay the Plaintiffs an award of damages to compensate emotional, physical, and psychological injury;

c. An award of punitive damages;

d. Appropriate injunctive relief issue against Lowndes County;

e. That this Court issue an Order requiring the Defendants to pay for all litigation costs, expenses, and reasonable attorney's fees associated with the filing of this action pursuant to 42 U.S.C. 1988; and

f. All other relief to which Plaintiffs are entitled or that the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

<u>/s/Richard A. Rice</u>
Richard A. Rice
THE RICE FIRM, LLC
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
Telephone 205 618-8733
rrice@rice-lawfirm.com